# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HEIDA M. WOODRUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-00621-AGF |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Heida M. Woodruff was not disabled, and, thus, not entitled to Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434, 1381-1385. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

## BACKGROUND

Plaintiff, who was born on August 16, 1982, filed her application for benefits on May 28, 2013, alleging a disability onset date of September 1, 2012, due to fibromyalgia, depression, and swelling of feet and legs. Tr. 46. After Plaintiff's application was denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 2, 2014, at which Plaintiff, who was

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

represented by counsel, testified.[2] By decision dated January 16, 2015, the ALJ found that under the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. Accordingly, the ALJ applied Rule 201.18 of the Medical- Vocational Guidelines, which directed a finding of not disabled under the Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on March 23, 2016. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred when he found that Plaintiff's mental impairments caused no more than a minimal or mild limitation in Plaintiff's ability to perform basic mental work activities and activities of daily living, and when the ALJ failed to obtain the testimony of a vocational expert regarding Plaintiff's non-exertional limitations. Plaintiff asks that the Court reverse the Commissioner's decision and remand the case with directions to award Plaintiff benefits, or with directions for further proceedings.

**Medical Record**

The Court adopts Plaintiff's unopposed Statement of Facts (ECF No. 22), along with Defendant's unopposed Statement of Additional Facts (Doc. No. 27-2). Together,

---

[2] The ALJ in the decision states that Nancy N. Hughes, an impartial vocational expert, also appeared and testified at the hearing. However, the record is devoid of any testimony by Ms. Hughes, and the lack of vocational expert testimony is one of two points on appeal.

these statements provide a fair description of the medical record. Specific facts will be discussed as needed to address the parties' arguments.

**ALJ's Decision (Tr. 13-22)**

The ALJ found that Plaintiff had the following severe impairments: obesity, fibromyalgia, and neutrophilia, but determined that Plaintiff did not have an impairment or combination of impairments that equaled the severity of a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to lift, carry, push, or pull up to ten pounds occasionally; stand and/or walk for two hours in an eight-hour day; and sit for six hours in an eight-hour day.

In arriving at this RFC, the ALJ reviewed Plaintiff's hearing testimony and the record evidence as to Plaintiff's physical and psychological conditions. The ALJ stated that Plaintiff was obese and that the effects of Plaintiff's obesity were considered when determining Plaintiff's RFC. The ALJ determined that Plaintiff's iron deficiency anemia and sleep apnea were non-severe impairments because they did not have a significant effect on her ability to perform basic work-related activities.

Turning to Plaintiff's mental impairments, the ALJ determined that based on Plaintiff's minimal treatment history and variable clinical signs and findings, Plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities or activities of daily living. The ALJ cited Plaintiff's ability to engage in substantial gainful activity, at least sporadically, through 2012, as well as

3

Plaintiff's lack of any recent history of individual therapy or inpatient psychological treatment. The ALJ also relied on Plaintiff's testimony that she could follow instructions; manage her finances; cook simple meals daily and full meals occasionally; shop monthly for a few hours at a time; perform personal care independently; read to her young children; perform some household chores; attend school conferences; and use a computer to access Facebook. The ALJ stated that Plaintiff generally exhibited an intact memory, despite a variable mood.

The ALJ then explained the weight he afforded opinion evidence in the record. He assigned "great weight" to the non-examining State agency psychologist's opinion that Plaintiff's impairments were non-severe because it was consistent with Plaintiff's conservative treatment history and her wide-range of activities of daily living, which indicated that she could interact with others and complete tasks with no more than occasional irritability. Tr. 17.

The ALJ gave "no weight" to the opinion to Osamede Edokpolo, M.D., Plaintiff's psychiatrist, that Plaintiff had a marked affective lability impairing interpersonal relationships; that she had a limited ability to function in a work environment; that Plaintiff was unlikely to think through her decisions secondary to impulsivity; and that her ability to perform work-like activities would be precluded at least 10 percent of the workday. The ALJ determined that the opinion was not controlling because Dr. Edokpolo did not begin treating Plaintiff until January 27, 2014, had apparently treated Plaintiff only one time, and his opinions were generally based on Plaintiff's subjective allegations, which were

4

inconsistent with Dr. Edokpolo's clinical signs and findings.

The ALJ also considered the opinion of Saulat Mushtag, M.D., Plaintiff's rheumatologist, who opined that Plaintiff could occasionally lift 10 pounds and stand, sit, or walk up to three hours per day. The ALJ assigned some weight to the opinion because it was consistent with Plaintiff's report that she could lift 10 pounds comfortably. However, the ALJ explained that the opinion was not entitled to controlling or significant weight because Dr. Mushtag's determination that Plaintiff would be limited to sitting up to three hours per day was inconsistent with Plaintiff's testimony that she spent most of her day seated in a recliner.[3]

The ALJ also assigned some weight to Dr. Mushtag's opinion that Plaintiff's complaints of lower extremity edema were unrelated to her fibromyalgia and that Plaintiff's fibromyalgia could result in fatigue. However, the ALJ noted that the opinion did not indicate how these symptoms, whether caused by fibromyalgia or not, limit Plaintiff's ability to perform basic work-related activities. Tr. 21.

The ALJ determined that several factors decreased the credibility of Plaintiff's

---

[3] The Court disagrees with the ALJ's determination that Dr. Mushtag's opinion that Plaintiff would be limited to sitting up to three hours per day is inconsistent with her ability to sit in a reclined position in a recliner. However, the ALJ properly took edema into account in making his determination here. The ALJ reviewed the medical records as a whole and properly found her subjective allegations conflicted with her medical history. Specifically, the ALJ concluded that Plaintiff's testimony that she had almost constant swelling and, as a result, sat in a recliner for hours at time was inconsistent with the medical records, which indicated that Plaintiff exhibited swelling on only two occasions and generally denied swelling at her doctor's appointments. *See Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (holding that the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole).

5

overall subjective allegations. For example, Plaintiff testified that she could not sit for longer than 15 minutes at a time (Tr. 11), which was inconsistent with her testimony that she spent the majority of her day sitting in a recliner (Tr. 36). Plaintiff testified that she needed help caring for her children and was always accompanied at home. However, her mother reported that Plaintiff only received help performing activities of daily living for about 30 minutes a day. Plaintiff also claimed that she had almost constant lower extremity edema despite using a diuretic and thrombo-embolic deterrent ("T.E.D.") hose. However, the ALJ noted that in Plaintiff's physical examinations only showed edema on two occasions over more than two years, and Plaintiff generally denied edema to her physicians. Further, the ALJ found that Plaintiff's allegations of total disability were not fully credible because her ability to complete tasks of daily living were inconsistent with disabling chronic pain. These factors cast doubt over Plaintiff's subjective allegations.

In arriving at his decision, the ALJ also cited Plaintiff's history of noncompliance with prescribed treatment. Plaintiff reported running out of Percocet each month, and, as of January 16, 2016 (the date of the ALJ's decision), she had not followed through with a prescription for physical therapy issued as far back as April 2013. Moreover, in March 2013, Plaintiff's rheumatologist noted that Plaintiff's neutrophilia may be caused by smoking, but Plaintiff testified that she continued to smoke up to one-half pack of cigarettes per day.

The ALJ ultimately determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform. This was based on the ALJ's determination that Plaintiff could perform all or substantially all of the exertional demands of sedentary work. Using Medical-Vocational Rule 201.28, the ALJ determined that Plaintiff, as a younger individual (age 18-44), with a high school diploma and work experience skills that are not transferable, was not disabled.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a vocational expert or other similar evidence to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**<u>Non-severity of Mental Impairment</u>**

Plaintiff first argues that substantial evidence does not support the ALJ's finding that her mental limitations are non-severe. The Commissioner counters that the medical evidence demonstrates that Plaintiff's mental impairments are not severe and that they did not impose significant functional restrictions for a minimum of 12 months, as required under the Act.

If the impairment would have no more than a minimal effect on the plaintiff's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the plaintiff's burden to establish that her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard, and the Eighth Circuit has upheld on numerous occasions the Commissioner's

finding that a claimant failed to make this showing. *See, e.g., Page*, 484 F.3d at 1043–44; *Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Plaintiff relies heavily on the opinions of Dr. Edokpolo, her psychiatrist. Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding, and the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)).[4]

Here, Dr. Edokpolo treated Plaintiff in January 2014. In his initial assessment, he noted that Plaintiff was pleasant, relaxed, and cooperative; that her affect was labile; that she exhibited no delusional beliefs; that she was alert; that she had good abstraction ability and was able to do similarities; and that she had adequate insight and impulse control. Dr. Edokpolo recommended an addition to Plaintiff's regimen of medications, as well as individual therapy. Tr. 511.

In a Mental Residual Functional Capacity Form ("MRFC") completed on March 5, 2014, Dr. Edokpolo checked boxes indicating that Plaintiff was unable to perform certain tasks for 15% of the workday due to her mental impairments, including remembering locations and work-like procedures; maintaining attention and concentration for extended

---

[4] For applications filed on or after March 27, 2017, the ALJ need not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. Instead, the ALJ is to consider the persuasiveness of those opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

periods; performing activities within a schedule; working in coordination with others without being distracted by them; and completing a normal workday without interruptions from psychologically-based symptoms. Tr. 517. Dr. Edokpolo did not identify any particular medical signs, symptoms, laboratory findings, or other facts that supported his assessment, although he did note that his prognosis of Plaintiff's condition was guarded because Plaintiff's response to medicine had been poor. Tr. 516, 518.

After reviewing Dr. Edokpolo's MRFC, the ALJ gave his opinion no weight because it appears he saw Plaintiff only one time, and his opinion was generally based on Plaintiff's subjective allegations and inconsistent with his own clinical signs and findings, which included observations that Plaintiff had a pleasant and relaxed demeanor, normal psychomotor activity, and adequate impulse control. Dr. Edokpolo also assigned the moderate global assessment of functioning ("GAF") score of 51-60 to Plaintiff.

Furthermore, although it is undisputed that Plaintiff suffers from depression, "[d]epression . . . is not necessarily disabling." *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (finding that ALJ had not erred in concluding that the plaintiff had not suffered from severe depression during the relevant time period, regardless of two doctors' findings that she had been depressed at various times). The medical records reflect that Plaintiff reported depression and emotional problems, but that she was consistently observed to be alert, cooperative, and speaking coherently. Shortly before Plaintiff started treating with Dr. Edokpolo, Plaintiff's primary care physician reported that although Plaintiff had a depressed mood and labile range of affect, her insight and judgment were

11

good. Tr. 462.

Moreover, the medical records show that Plaintiff's depression was controlled with medication, was exacerbated by Plaintiff's non-compliance with medication, and overall lasted in any uncontrolled manner for less than 12 months. The ALJ's finding is consistent with the opinion of the state agency psychologist that Plaintiff's mental impairments were non-severe, as well as with Plaintiff's lack of treatment history for any mental impairment until or after she applied for disability and Plaintiff's wide range of activities of daily living, which indicate she can interact with others and complete tasks.

As a result, although Plaintiff's mental impairments are noted throughout her medical records, the ALJ provided good reasons for the weight to be given to the opinion of Plaintiff's treating physician, and substantial evidence in the record supports the ALJ's finding that Plaintiff's mental impairments were non-severe.

**Non-Exertional Limitation**

As discussed above, the ALJ utilizes a five-step analysis to determine whether a Plaintiff is disabled. Plaintiff carries the burden of establishing that she is unable to perform her past relevant work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that she maintains the RFC to perform a significant number of jobs within the national economy. *See Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir.2000). Once the burden shifts to the Commissioner at step five, the Commissioner can meet its burden through one of two means. "If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this burden

by referring to the medical-vocational guidelines or 'Grids,' which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Gray v. Apfel,* 192 F.3d 799, 802 (8th Cir. 1999). If the ALJ determines that a plaintiff's nonexertional limitations do not affect the plaintiff's RFC, then the ALJ may rely on the Guidelines to direct a conclusion of either disabled or not disabled without resorting to vocational expert testimony. *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000).

Here, the sole issue raised by Plaintiff is that the ALJ failed to take into account the nonexertional limitation of fatigue, and the ALJ should have obtained vocational expert testimony regarding that limitation. In the decision, the ALJ determined that Plaintiff was unable to perform her past relevant work. He used the Grids to determine that Plaintiff could perform other jobs available in the national economy and, therefore, was not disabled. The ALJ acknowledged Plaintiff's subjective complaints of fatigue, and the ALJ cited Dr. Mushtag's opinion that Plaintiff's fibromyalgia could result in symptoms such as fatigue. Tr. 21. However, the ALJ did not fully credit Plaintiff's complaints based on inconsistencies in her testimony about how that fatigue limited Plaintiff's ability to perform basic work-related activities. According to Plaintiff's activities of daily living report, she was able to perform personal care independently; help her daughter get ready for school in the morning; fix dinner for the family; get the kids ready for bed; do laundry;

attend school conferences; and shop. She was also able to use the computer.

Here, the ALJ properly based his determination that Plaintiff had no significant non-exertional limitations on the activities reported by Plaintiff and the absence of a medical opinion supporting a non-exertional limitation. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003)("The ALJ did not err in applying GRIDS, because the ALJ had permissibly discredited [the plaintiff's] complaints of fatigue and swelling based on the lack of evidence supporting these contentions.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 25th day of September, 2017.